## CASSARELLO v. UNITED STATES.

(District Court, M. D. Pennsylvania. December Term, 1919.)

No. 1137.

1. **Army and navy ☜51½, New, vol. 12A Key-No. Series—Executor of beneficiary can collect war risk insurance installments accrued before beneficiary's death.**

Under Act Oct. 6, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514a et seq.), providing for war risk insurance payable to a beneficiary designated from among certain relatives, installments which became due and payable before the beneficiary's death were vested in the beneficiary and passed according to his will, and this construction is supported by the amending Act Dec. 24, 1919, § 19, making such installments payable to the personal representatives of the deceased beneficiary.

2. **Army and navy ☜51½, New, vol. 12A Key-No. Series—State insurance statute cannot exclude from evidence regulations of War Risk Bureau.**

The rules and regulations of the Director of the Board of War Risk Insurance cannot be excluded from evidence in a suit to recover installments due thereon on the ground that such regulations were not attached to the policy as required by the law of the state, since a contract made in pursuance of the federal statute cannot be controlled by state laws or decisions.

3. **Evidence ☜47—Judicial notice of regulations of department authorized by statute.**

Rules and regulations, prescribed by a department of the government in pursuance of its express statutory authority to make them, have the force of law, can be judicially noticed by the courts, without having been formally introduced in evidence.

4. **Evidence ☜341—Certified copies of application for war risk insurance are admissible.**

Under Rev. St. § 882 (Comp. St. § 1494), making copies of any documents in any of the executive departments, authenticated under the seals of such departments, admissible in evidence the same as the originals thereof, a certified copy of the application for war risk insurance is admissible in evidence.

5. **Statutes ☜216—Legislative intent expressed by authors of law referred to, where act obscure.**

Where the wording of an act is somewhat obscure, the courts may seek the legislative intent, as expressed by the authors of the law, as a guide.

6. **Army and navy ☜51½, New, vol. 12A Key-No. Series—Future installments of war risk insurance cannot be disposed of by beneficiary's will.**

Under Act Oct. 6, 1917, § 402 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514uuu), making war risk insurance payable only to beneficiaries selected from a specified class, and giving the right to change beneficiaries within the class and the rules and regulations of the Bureau of

War Risk Insurance thereunder, the installments of insurance which have not accrued at the time of the beneficiary's death cannot be disposed of by his will, but are to be distributed among those of the next of kin of insured who are within the designated class of beneficiaries.

**7. Statutes ⪦219—Construction by bureau charged with execution is entitled to great weight.**

The construction placed on the doubtful portion of a statute by the bureau charged with its execution is entitled to great weight, and it should not be lightly disregarded.

At Law. Action by Savino Cassarello, executor under the will of Patrick Cilleto, sometimes known as Patrick Chilant, against the United States, to recover installments due under a certificate of War Risk Insurance. Judgment rendered for plaintiff for only the installments which became due before the death of his testator.

See, also, 265 Fed. 326.

A. A. Vosburg, of Scranton, Pa., for plaintiff.

R. L. Burnett, of Scranton, Pa., and Ed. H. Horton, of Washington, D. C., for the United States.

WITMER, District Judge. Lorenzo Celetti, being in the military service of the United States under the name of Lawrence Seigle, on January 11, 1918, made application to the United States, under such assumed name, for insurance in the sum of $10,000, designating as beneficiary "step-brother (29 years old) Patsy Gilette," followed by a certificate of insurance issued through the Bureau of War Risk Insurance, for the Treasury Department.

Lorenzo Celetti died, while in the military service of the United States, on October 29, 1918. Immediately thereafter a claim for insurance was made by Patrick Cilleto. A question as to the identity of the beneficiary with that of the claimant arose. It was, however, finally settled that Patsy Giletti, variously known as Patrick Cilletto, Patsy Giletti, or Patrick Chilant, whose name was Pasquale Ciletti, was a brother of the full blood of the insured soldier. The designated beneficiary, Pasquale Celetti, died during the month of April, 1919, before the matter of his identity had been adjusted. He left a will, naming Savino Cassarello as executor, which provided, inter alia, as follows:

"Third. I am beneficiary of $10,000 under the Bureau of War Risk Insurance, for the death of Lawrence Seigle, my brother, private of 303 Guard and Fire, Q. M. C. U. S. A. By this will I authorize and empower the said Savino Cassarello to collect same and remit as he receive the money by the War Department with the exchange to my wife in Italy, also to find out if my mother is still living and if my mother is living, then, I direct thereby the said executor to forward to my mother Filomena Siconolfi $15 per month with the exchange to be deducted from the installment which receive from the War Department, or instruct my wife to give my mother an adequate support of an equal amount."

This action was brought against the United States by Savino Cassarello, executor of the estate of Pasquale Celetti, the beneficiary designated by Lawrence Seigle, for the purpose of recovering all the installments of war risk insurance accrued and unpaid, including both

those installments accrued prior to the death of the beneficiary (Pasquale Celetti) and those accruing after the beneficiary's death; the contention being that the designated beneficiary took a vested interest in the insurance upon the death of the insured, and that he could by will dispose of and pass as his estate the accrued as well as the accruing installments or payments provided to be paid the beneficiary designated in the certificate of insurance.

[1] As to the installments which had accrued prior to the beneficiary's death, remaining unpaid at that time, there seems to be no serious dispute. When the installments became due and payable, they no doubt vested in the person having a right to receive them, and having become vested, they passed according to such beneficiary's will. The contest has to do altogether with the deferred payments or installments not yet payable when the beneficiary died.

The contract of insurance, if it may be called such, was made under and by virtue of an act of Congress approved October 6, 1917 (40 Stat. 398, c. 105), which amended the act of September 2, 1914 (38 Stat. 711, c. 293; Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 514a–514j), by establishing in the Treasury Department a bureau to be known as the Bureau of War Risk Insurance, and providing further:

"Sec. 1. * * * That there be in such bureau * * * a Division of Military and Naval Insurance in charge of a * * * Commissioner of Military and Naval insurance. * * *

"Sec. 13. That the director, subject to the general direction of the Secretary of the Treasury, shall administer, execute, and enforce the provisions of this act, and for that purpose have full power and authority to make rules and regulations, not inconsistent with the provisions of this act, necessary or appropriate to carry out its purposes, and shall decide all questions arising under the act, except as otherwise provided in sections five and four hundred and five. * * *"

40 Stat. c. 105, pp. 398, 399 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 514a, 514kk).

[2] In pursuance of the authority granted, the Director of the Bureau of War Risk Insurance did make certain rules and regulations. To the admission of these rules and regulations, the plaintiff objected on the ground that they were not attached to the policy, as required by the Pennsylvania law (Pa. St. 1920, § 12399). If we had under consideration the ordinary policy of insurance of an old line insurance company, this objection might be well taken; but a contract made in pursuance of a federal statute must be construed with reference to such statute, and cannot be controlled by the state laws or decisions. Watson v. Tarpley, 58 U. S. (18 How.) 517–521, 15 L. Ed. 509; Calhoun Mining Co. v. Ajax, 182 U. S. 499, 21 Sup. Ct. 885, 45 L. Ed. 1200; Lewis' Sutherland on Statutory Construction, vol. 2, p. 1314.

[3] Furthermore, rules and regulations prescribed by a department of the government in pursuance of a statutory authority, have the force of law. U. S. v. Grimaud, 220 U. S. 506, 517, 31 Sup. Ct. 480, 55 L. Ed. 563; United States v. Birdsall, 233 U. S. 231, 34 Sup. Ct. 512, 58 L. Ed. 930; Covey v. United States (D. C.) 263 Fed. 768, 775. As was said in Caha v. United States, 152 U. S. 211, at page 221, 14 Sup. Ct. 513, at page 517 (38 L. Ed. 415):

"* * * There was no necessity for a formal introduction in evidence of such rules and regulations. They are matters of which courts of the United States take judicial notice. Questions of a kindred nature have been frequently presented, and it may be laid down as a general rule, deducible from the cases, that wherever, by express language of any act of Congress, power is entrusted to either of the principal departments of government to prescribe rules and regulations for the transaction of business in which the public is interested, and in respect to which they have a right to participate, and by which they are to be controlled, the rules and regulations prescribed in pursuance of such authority become a mass of that body of public records of which the courts take judicial notice."

[4] Under section 882, Revised Statutes (Comp. St. § 1494), providing for the admission in evidence of copies of documents of this nature, the certified copy of the application for insurance of Lawrence Seigle was properly in evidence.

[5] In arriving at a proper decision, this court may therefore turn for assistance, not only to the certificate of insurance, but also to the application for insurance, and the rules and regulations of the department, as well as the act itself, and, where the wording of the act is somewhat obscure, it may seek the legislative intent as expressed by the authors of the law, as a guide. In a very recent opinion of the Supreme Court (Duplex Printing Press Co. v. Deering, etc., 254 U. S. 443, 41 Sup. Ct. 172, 65 L. Ed. ——, rendered January 3, 1921), Justice Pitney said:

"By repeated decisions of this court it has come to be well established that the debates in Congress expressive of the views and motives of individual members are not a safe guide, and hence may not be resorted to, in ascertaining the meaning and purpose of the law-making body. Aldridge v. Williams, 3 How. 9, 24; United States v. Union Pacific R. R. Co., 91 U. S. 72, 79; United States v. Freight Association, 166 U. S. 290, 318. But reports of committees of House or Senate stand upon a more solid footing, and may be regarded as an exposition of the legislative intent in a case where otherwise the meaning of a statute is obscure. Binns v. United States, 194 U. S. 486, 495. And this has been extended to include explanatory statements in the nature of a supplemental report made by the committee member in charge of a bill in course of passage. Binns v. United States, supra; Penna. R. R. Co. v. International Coal Co., 230 U. S. 184, 198, 199; United States v. Coca Cola Co., 241 U. S. 265, 281; United States v. St. Paul, M. & M. Ry. Co., 247 U. S. 310, 318."

[6] The application for insurance contained the following clause:

"In case any beneficiary die or become disqualified after becoming entitled to an installment but before receiving all installments, the remaining installments are to be paid to such person or persons within the permitted class of beneficiaries as may be designated in my last will and testament, or in the absence of such will, as would under the laws of my place of residence be entitled to my personal property in case of intestacy."

This application was made part of the contract of insurance in the certificate of insurance which so far as it had a bearing on this suit, contains the following:

"Subject to the payment of the premiums required, this insurance is granted under the authority of an act amending 'An act entitled "An act to authorize the establishment of a Bureau of War Risk Insurance in the Treasury Department," approved September 2, 1914, and for other purposes,' approved October 6, 1917, and subject in all respects to the provisions of such Act, or any amendments thereto, and of all regulations thereunder, now in force or

hereafter adopted, all of which, together with the application for this insurance, and the terms and conditions published under the authority of the act, shall constitute the contract. * * *

"Important Notice.

"The insured may change the beneficiary without the consent of such beneficiary. This insurance is not assignable and is not subject to the claims of the creditors of the insured or of the beneficiaries."

Among such regulations mentioned in the certificate it would be necessary to include Bulletin 1, issued October 15, 1917, and providing on page 4 for the insertion in a policy of the following:

"If no beneficiary within the permitted class be designated by the insured, either in the insured's lifetime or by his last will and testament, or if any above designated beneficiaries is or becomes disqualified or does not survive the insured, the insurance (or if any above designated beneficiary shall survive the insured, but shall not receive all the installments, then the remaining installments) shall be payable to such person or persons within the permitted class of beneficiaries as would under the laws of the insured's place of residence be entitled to his personal property in case of intestacy."

In considering these various provisions of the regulations, application, and certificate, it is necessary also to keep in mind the words and purpose of the act. Article 3 of the act dealt with compensation for the soldier and a limited class of dependents, in case of his disability while in active service, or for such dependents in case of his death. It partakes of the nature of a pension. Article 4, containing the insurance provisions, states:

"Sec. 400. That in order to give to every commissioned officer and enlisted man and to every member of the Army Nurse Corps (female) and of the Navy Nurse Corps (female) when employed in active service under the War Department or Navy Department greater protection for themselves and their dependents than is provided in article 3, the United States * * * shall grant insurance," etc. Comp. St. 1918 Comp. St. Ann. Supp. 1919, § 514u.

Protection for the soldier and his dependents is the primary object of the act. It purposely limits the beneficiaries. Section 402 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514uuu.

"The insurance shall not be assignable, and shall not be subject to the claims of creditors of the insured or of the beneficiary. It shall be payable only to a spouse, child, grandchild, parent, brother or sister."

By the word "only" is limited expressly the class of beneficiaries. In the same section it further provides:

"Subject to regulations, the insured shall at all times have the right to change the beneficiary or beneficiaries of such insurance without the consent of such beneficiary or beneficiaries, but only within the classes herein provided."

This negatives any idea of a right vested during the lifetime of the insured. Nor is there anything in the language of the act itself, or as appearing from the discussions of the bill by committee members on the floor, to lend countenance to any construction that a beneficiary had a vested right in installments not yet accrued, even after the death of the insured, but the contrary seems to have been in mind.

Mr. Rayburn of the Committee of Interstate and Foreign Commerce submitted a supplemental report in the House on September 5, 1917, containing these words:

"Speculation in the insurance must not be permitted, it must be unassignable and free from the claims of creditors, both of the insured and of the beneficiary. It must not be payable to any and every one, but to a limited class of relatives." House Report, 130, pt. 3..

In a discussion on the floor of the House, in dealing with that section of the act providing for the passing of installments to the permitted class under intestate laws, unless a beneficiary is designated during insured's life or by his will, within the permitted class, Mr. Rayburn said in part:

"The United States government says to this man (the soldier): 'We will carry that risk for $50 a thousand. We will give you the lowest insurance that you can get as a sound well man in peace times. If you have a wife, though, or child or mother dependent upon you, and you are killed, this insurance money may go to them, because you have a personal and direct interest in them. Some distant cousin off yonder that you never saw, or some uncle, probably, who is living in opulence and who does not need the money, will not get it.' " Cong. Rec. Sept. 8, 1917, p. 6761.

Senator Williams, in charge of the bill in the Senate, made use of the following language:

"It [the government] is not going into the insurance business at all. In the first place, it has confined its activities to the soldiers and the sailors in the service. In the second place, it confines the beneficiaries to the soldiers' and sailors' dependent families." Cong. Record, vol. 55, pt. 8, Oct. 3, 1917, p. 7690.

Comptroller Warwick, in an opinion to the Secretary of the Treasury, July 5, 1919, said:

"This insurance feature of the law is not an out-and-out contract of insurance on an ordinary business basis; neither is it a pension, but it partakes of the nature of both."

Both Senator Williams and Comptroller Warwick here touched upon a vital distinction to be borne in mind, that this is neither a pension nor insurance. It partakes in some respects of the nature of both. It is not governed by the law of either. It is governed by the statute creating it, and must be construed in accordance therewith. Section 402 of the bill, as originally introduced, in naming the class of beneficiaries, contained the provision:

"And to such other persons as may be provided from time to time by regulation."

These words were stricken out by Senate amendment 108. This shows clearly the intention of Congress to limit and fix the class of beneficiaries and to prevent any extension even by the bureau. The installments are intended for the soldier's dependents within a limited class, and only these.

Such was the construction placed upon the Act by the officers of the bureau charged with the duty of administering it. Express provision was made for this situation in Bulletin 1, supra. The decisions of the

Comptroller went even to the extent of holding that accrued, but unpaid, installments could not be paid to the estate of a beneficiary. 24 Comp. Dec. 521, 733. Congress, fully aware of the rulings of the Comptroller and of the provisions of Bulletin 1, passed the amendment of December 24, 1919 (41 Stat. c. 16, p. 371):

"Sec. 19. That the amount of the monthly installments of allotment and family allowance, compensation, or yearly renewable term insurance which has become payable under the provisions of the War Risk Insurance Act but which has not been paid prior to the death of the person entitled to receive the same may be payable to the personal representatives of the deceased person."

So far as concerns the installments which had accrued to a beneficiary in his lifetime, but were unpaid at his death, this shows an intention to change the practice established by the Comptroller's decision, and supports the conclusion already given as to the accrued installments. Concerning installments accruing after the death of the beneficiary, there was no change, but a re-enactment in section 15 of the amendment in the language:

"That if any person to whom such yearly renewable term insurance has been awarded dies, or his rights are otherwise terminated after the death of the insured, but before all of the two hundred and forty monthly installments have been paid, then the monthly installments payable and applicable shall be payable to such person or persons within the permitted class of beneficiaries as would, under the laws of the state of residence of the insured, be entitled to his personal property in case of intestacy; and if the permitted class of beneficiaries be exhausted before all of the two hundred and forty monthly installments have been paid, then there shall be paid to the estate of the last surviving person within the permitted class the remaining unpaid monthly installments."

[7] The intention of Congress here coincides with the construction placed on the original act by the bureau in Bulletin 1, and lends strong support to the conclusion that the bureau had rightly construed the act. Furthermore, the construction placed on a doubtful portion of a statute by the bureau charged with its execution is entitled to great weight and should not be lightly disregarded. U. S. v. Finnell, 185 U. S. 236, 244, 22 Sup. Ct. 633, 46 L. Ed. 890; Heath v. Wallace, 138 U. S. 573, 11 Sup. Ct. 380, 34 L. Ed. 1063; United States v. T. F. A., 166 U. S. 290, 17 Sup. Ct. 540, 41 L. Ed. 1007; Pennell v. P. & R., 231 U. S. 675, 34 Sup. Ct. 220, 58 L. Ed. 430.

It appears, therefore, in view of all that has been shown, quite clear that a beneficiary, upon the death of the insured, did not take a vested interest in installments of war risk insurance not yet accrued, but that he was bound by the provisions pertaining thereto in the rules and regulations, and the provisions of the application, expressly made a part of the contract. Pasquale Celetti, the beneficiary, could not, therefore, pass the unaccrued installments by his will to his executor, Savino Cassarello. These amounts must be paid to such persons, within the permitted class of beneficiaries, as would, under the laws of the state of the residence of the insured, be entitled to his personal property in case of intestacy.

It is therefore ordered, adjudged, and decreed that Patrick Cilleto was entitled to the monthly installments of $57.50 on account of the insurance in the sum of $10,000 granted to Lawrence Seigel under the War Risk Insurance Act, which accrued after the death of said Lawrence Seigel and prior to the death of Patrick Cilleto; that the said Patrick Cilleto was entitled only to the monthly installments of $57.50 which accrued during his lifetime, and acquired no right, title, or interest in or to any installments accruing subsequent to the date of his death, and that said executor is not entitled to payment of any installments of said insurance which accrued after the death of Patrick Cilleto; that Savino Cassarello, executor under the will of said Patrick Cilleto, is entitled to payment of such monthly installments of $57.50 which accrued after the death of Lawrence Seigel and prior to the death of Patrick Cilleto, and which remained unpaid by the Bureau of War Risk Insurance at the time of the death of said Patrick Cilleto, and the executor of the will of said Patrick Cilleto is forever barred from asserting or maintaining any claim or action against the United States on account of any monthly installments of the insurance granted to Lawrence Seigel under the War Risk Insurance Act which accrued after the death of Patrick Cilleto.