## HELMHOLZ et al. v. HORST et al.

(Circuit Court of Appeals, Sixth Circuit. January 11, 1924.)

No. 3887.

**1. Army and navy ⚖⇒51½, New, vol. 12A Key-No. Series—Will held effective designation of beneficiary of war risk insurance, who was ineligible at time of execution.**

Where an application for war risk insurance, and the certificate issued thereon named no beneficiary, but an unprobated will and other extrinsic evidence showed that the soldier desired to designate an aunt, who was also his foster mother, but, on learning that she was ineligible under the law as it then existed, omitted any designation and made a will bequeathing the insurance to her, *held*, that there was an effective designation under War Risk Insurance Act, § 22, as amended by Act Dec. 24, 1919, § 2 (Comp. St. Ann. Supp. 1923, § 514mmm), declaring such a beneficiary eligible.

**2. Army and navy ⚖⇒51½, New, vol. 12A Key-No. Series—Constitutional law ⚖⇒105, 154(1)—Act relating to beneficiaries, enacted after insured's death, held not to impair obligation of contract or defeat vested rights.**

Act Dec. 24, 1919, amending War Risk Insurance Act Oct. 6, 1917 (Comp. St. Ann. Supp. 1923, §§ 514mmm, 514uuu¾), as to parties to whom benefits were to be paid, though enacted after insured's death, *held* not to impair obligation of the contract, or defeat vested rights of beneficiary under a certificate containing provisions that the policy was subject to all the provisions of the act and regulations thereunder then in force or thereafter adopted.

**3. Army and navy ⚖⇒51½, New, vol. 12A Key-No. Series—Insured's unprobated will admissible to show intended beneficiary of war risk insurance.**

Where an application for war risk insurance and the certificate issued thereon named no beneficiary, an instrument purporting to be insured's unprobated will *held* admissible to show the intended beneficiary.

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; John W. Peck, Judge.

Suit in equity by Catherine Horst against the United States, Robert Helmholz, and others. From the decree rendered (283 Fed. 600), all of the defendants, except the United States, appeal. Affirmed.

This is an appeal from the decree of the District Court awarding to the appellee Catherine Horst the benefits accruing and to accrue from and after December 31, 1920, of war risk insurance issued by the United States government on the life of Albert R. Marshall. The following findings of fact made by the court are not in controversy:

(1) During the childhood of Albert R. Marshall his parents were divorced, and custody of said Albert R. Marshall was awarded to his mother, who later married Henry W. Helmholz, and the defendants, Robert Helmholz, Margaret Louis Helmholz, and Bertha Charlotte Helmholz, are the children of this marriage and half-brother and half-sisters of the said Albert R. Marshall.

(2) The plaintiff was the foster mother and aunt of said Albert R. Marshall, and claims as designated beneficiary within the class permitted under the amendment of December 24, 1919 (41 Stat. 371 [Comp. St. Ann. Supp. 1923, § 514mmm]), under certificate of war risk insurance No. 2140938, issued to Albert R. Marshall, deceased, late private of the Marine Corps of the United States, on or about January 23, 1918, by the Bureau of War Risk Insurance of the United States.

(3) The individual defendants above named claim by their guardian, Henry W. Helmholz, under said certificate, by the terms of the War Risk Insurance Act of October 6, 1917 (40 Stat. 398 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514a et seq.]), as statutory beneficiaries, upon the failure of the as-

⚖⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

sured to designate one within the class permitted by statute at the date of his death.

(4) In July, 1913, the mother of said Albert R. Marshall, being ill and realizing that she was about to die, sent for her sister, the plaintiff, Catherine Horst, and told her that she was worried about the future of Albert, because he did not get along well with his stepfather, Henry W. Helmholz, and asked the plaintiff to take the boy and raise him, which the plaintiff promised to so do. Shortly afterwards, the mother having died, plaintiff took Albert into her household, and thereafter reared and supported him, and no one else contributed to his support from that time.

(5) Albert R. Marshall enlisted April 19, 1917, at the age of 16 in the Marine Corps of the United States, Catherine Horst signing the necessary documents, giving consent to his enlistment, because of his minority.

(6) In January, 1918, when stationed at Lormont, France, Albert R. Marshall made application on the prescribed form of the Bureau of War Risk Insurance, which was duly signed and witnessed, for war risk insurance in the sum of $10,000, payable to himself during total permanent disability, and from and after his death, to the plaintiff. He wrote his aunt, the plaintiff, "I have a death or disability insurance of $10,000 with you as beneficiary in case of death," and to an uncle, "I have taken insurance for disability or death. The amount is $10,000, and I have made it out with Aunt Kate as beneficiary, in case a Boche gets the best of me, which I think is not very likely." The company clerk, however, told him that an aunt could not be beneficiary under the law. He declined to designate any other beneficiary, and the matter was taken up with the captain and lieutenant commanding said Albert R. Marshall. They, after consideration, advised him to name no beneficiary in his application, but to make a will leaving the proceeds of said insurance to his aunt, informing him that thus the plaintiff would receive the benefits in case of his death. The original application was thereupon destroyed.

(7) Upon January 23, 1918, he signed another application for insurance, payable from and after his death "to the following persons, in the following amounts—name of beneficiary—has no relative." This was also duly signed and witnessed, and a certificate was issued, numbered 2140938. This certificate was in brief form, merely declaring that Albert R. Marshall had applied for war risk insurance in the amount of $10,000 payable in case of death or total permanent disability in monthly installments of $57.50; that the insurance was granted under the authority of the Act of October 6, 1917, subject to the payment of the premiums required and to the provisions of the act and any amendment thereto, and of all regulations thereunder, then in force or thereafter adopted, all of which, together with the application and the terms and conditions published under the authority of the act, were to constitute the contract. No payee in case of death was therein designated.

(8) On February 3, 1918, Marshall executed a brief will, with four soldiers of his regiment as witnesses, in which he bequeathed to his aunt all money or insurance and any other possessions. On the same day he wrote his aunt, repeating that he had taken out the insurance, stating, "And as I had no one dependent on me for support, and no one to make it out to that was eligible according to the government views, I had to make it out to myself, and in case of my death I am making out a will leaving the $10,000 to you; in case I get my passport here you can collect. I could have made it out to my Dad and save some red tape, but you know as long as you live he will get nothing from me."

(9) Albert R. Marshall was mortally wounded at Belleau Wood and died June 14, 1918.

(10) The War Risk Insurance Bureau awarded the benefits of the certificate to the individual defendants and paid the same to them until December 31, 1920, the approximate date of the institution of this cause in equity by the plaintiff. The plaintiff has waived, by stipulation, any claim against the United States for payments made prior to that date. Since that date, no payment of installments has been made, but they have been retained by the United States pending the determination of this action.

(11) The government, having paid the individual defendants until said date of December 31, 1920, ask that those payments be undisturbed, but any installments due from and after the latter date, be decreed to the plaintiff.

(12) The will executed by Albert R. Marshall was signed in conformity to the provision of the law of the state of Ohio, which was his domicile, except that he was not of full age, and actually aged 17 at that time, nor had said will been probated.

Walter W. Helmholz, of Cincinnati, Ohio (Page & Hurt, of Los Angeles, Cal., on the brief), for appellants.

Edward H. Horton, Sp. Asst. U. S. Atty., of Toledo, Ohio (Robert Black, of Cincinnati, Ohio, on the brief), for appellees.

Before DENISON and DONAHUE, Circuit Judges, and HICKS, District Judge.

DONAHUE, Circuit Judge (after stating the facts as above). [1, 2] Under the provisions of the War Risk Insurance Act of October 6, 1917, in force at the time the certificate of insurance was issued upon the application of Marshall, and at the time of his death, the beneficiaries were restricted to a spouse, child, grandparent, parent, brother, or sister of the whole or half blood. That act further provided that if no beneficiary within the permitted class be designated by the insured, either in his lifetime or by his last will and testament, the insurance shall be payable to such person or persons within the permitted class of beneficiaries as would, under the laws of the state of the residence of the insured, be entitled to his personal property in case of intestacy.

At the time of his death, Albert R. Marshall was a resident of Ohio. Under the statute of descent and distribution of Ohio, if the intestate leaves no children, husband or wife or brothers or sisters of the whole blood, the personal estate passes to the brothers and sisters of the half blood. At the time the War Risk Insurance Bureau awarded the benefits of this insurance to the brother and half-sisters of Albert R. Marshall they were the only ones coming within the permitted class of beneficiaries designated in the War Risk Insurance Act then in force that would, under the laws of the state of Ohio, be entitled in case of intestacy to the personal property of the insured.

On December 24, 1919, Congress passed an act, commonly known as the Sweet Act (Comp. St. Ann. Supp. 1923, §§ 514mmm, 514uuu¾), amending the provisions of the original War Risk Insurance Act, by enlarging the permitted class of beneficiaries to include uncles, aunts, nephews, nieces, brothers-in-law and sisters-in-law of the insured, and further defining the terms father and mother to include stepfathers, stepmothers, fathers and mothers through adoption, and persons who have stood in loco parentis to a member of the military or naval forces at any time prior to his enlistment or induction for a period of not less than one year, and that the provisions of this act should be deemed to be in effect as of October 6, 1917. This amendment further provided that all awards of insurance under the provisions of the said War Risk Insurance Act, as originally enacted and subsequently amended, "shall be revised as of the first day of the third calendar month after the passage of this act in accordance with the provision of the said War

Risk Insurance Act as modified by this amendatory act." This amendment brought Catherine Horst, who was not only the aunt of the insured, but a person who had stood in loco parentis to him for a number of years prior to his enlistment, within the permitted class of beneficiaries of war risk insurance.

It is insisted, however, upon the part of the brother and the sisters of the half blood, that this contract of insurance does not differ in any respect from the ordinary contract issued by private insurance companies, that the right to this insurance vested in them immediately upon the death of the insured, and that this vested right cannot be defeated by subsequent legislation by Congress. It is perhaps true that war risk insurance does partake somewhat of the nature of private contracts of insurance and that many of the established principles of law in reference to such private contracts may be applicable thereto; nevertheless there is a substantial difference between these two classes of insurance that must be kept in mind in the disposition of any question arising upon the particular facts of each case.

The object of the War Risk Insurance Act was to give insurance to those who entered the military and naval service and to protect those who were dependent upon them. To this end the class of beneficiaries was narrowly restricted. The premium rates charged were the net rates based upon the American Experience Table of Mortality and interest at $3\frac{1}{2}$ per cent. per annum. The government wholly assumed, without compensation, the expenses of administration and the excess mortality and disability cost resulting from the hazards of war.

In order to insure the accomplishment of the beneficial purposes of the War Risk Insurance Act, it was further provided therein that the terms and provisions of such contracts of insurance should be subject in all respects to the provisions of the act or any amendments thereto, and also subject to all regulations thereunder, now in force or hereafter adopted, all of which, together with the application for insurance and the terms and conditions published under authority of the act, should constitute the contract. All of these provisions and conditions were written into the certificate issued to Alfred R. Marshall, and became and are a part of the contract. For this reason subsequent amendments of the War Risk Insurance Act and subsequent regulations affecting this contract, which is still in force, do not impair the obligations of an existing contract, but are in direct conformity with its terms, and in furtherance of its purpose and intent.

The War Risk Insurance Act further provided that the insurance thereby authorized should not be assignable, and should not be subject to the claims of creditors of the insured or of the beneficiary; that, in case no person coming within the restricted class survived the insured, only the reserved value of the policy, if any, should be paid to his estate. There are also a number of provisions in this act by which the insured or any beneficiary thereunder may, by his acts, defeat his right to this insurance. It is evident therefore that the beneficiary named by the insured, or designated by law, took no vested interest in this insurance other than to the accrued payments during the time the beneficiary was entitled to receive the same and that further installments would not

pass by the law of descent and distribution to the heirs of the beneficiary, nor could the beneficiary devise the same by will. Cassarello v. U. S. (D. C.) 271 Fed. 486, 488, affirmed (C. C. A.) 279 Fed. 396.

[3] It is claimed, however, that Catherine Horst was not named in the application as the beneficiary; that the purported will of Albert R. Marshall is not only invalid as a will, because, being a minor, he had not legal capacity to make a will, but it is wholly ineffective to change the beneficiary designated by law, where the applicant failed to designate a beneficiary in his application; that this alleged will was never admitted to probate, and therefore was improperly admitted in evidence. However that may be, it is, and was intended by the insured to be, a designation in writing of his aunt, Catherine Horst, as the beneficiary of this insurance, as he had sought to do in the first application filed. As such paper writing it was properly admitted in evidence, although not a will, and not admitted to probate.

The evidence in this case overwhelmingly establishes the fact, and the trial court so found, that Albert R. Marshall entered into this contract of insurance with the United States government for his own benefit, and in case of his death for the benefit of his aunt, Catherine Horst. That was his statement to his commanding officers, and when one of them suggested to him that he would better name his parents, he said:

"No; his parents had not done right by him; that his aunt, Catherine Horst, had been a real mother to him, and that he wanted to give her all he could."

He then followed to the letter the instructions given him by his commanding officers in order to carry out his settled purpose to make his aunt the beneficiary of this insurance, and paid and continued to pay the premiums on this policy with the understanding and belief that in case of his death the benefits would be paid to her. That was the only contract he ever made with the United States government, in so far as he understood it, and his understanding was based upon statements made to him by his commanding officers, representing the government, and through whom enlisted men made their applications for insurance, and upon whose statements and representations he had a right to rely.

It is insisted, however, that, no matter what Albert R. Marshall understood to be the contract, he is charged with the knowledge of the law, and that the law then in force entered into and became a part of the contract, the same as if written therein. For the purposes of this case, that proposition may be conceded, for the original War Risk Insurance Act expressly provided that the terms and conditions of the contract should be subject in all respect to any amendment of the law, and to all regulations thereunder, then in force or which might thereafter be adopted.

This provision of the act, under authority of which this insurance was written, is equally binding upon the insured and the beneficiary, and the benefits cannot be accepted under this contract and its burdens rejected. So far as disclosed by this record, it was neither the intent nor the purpose of either of the contracting parties to enter into a contract of insurance on the life of Marshall for the benefit of his

half-brother and half-sisters. The government agreed to pay all benefits to Catherine Horst, but, under the existing law at the time of Marshall's death, it could not keep and observe the conditions of its contract.

The amendment of December 24, 1919, is wholly within the contemplation of the conditions and terms in the contract of insurance making it subject to all amendments of the original act, and was clearly intended to enable the United States government to keep faith with its dead and to carry out the contract made with Albert R. Marshall and other soldiers similarly situated, who had sought to designate beneficiaries other than those then in the restricted class, according to the meaning. intent, and purpose of the contracting parties.

For the reasons stated, the judgment of the District Court is affirmed.

---

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes