## WHITE v. UNITED STATES et al.

### (District Court, E. D. Virginia. May 2, 1924.)

1. **Insurance ⬤⟹586—Rule as to vested rights of beneficiary stated.**
   Ordinarily, where policy permits change of beneficiary at insured's will, the beneficiary during insured's life obtains no vested interest in insurance; but, on insured's death without change of beneficiary, the beneficiary's rights become vested, and may not be divested nor diminished in value by any act of insurer or subsequent change of law.

2. **Army and navy ⬤⟹51½, New, vol. 12A Key-No. Series—War risk insurance policy issued subject to future laws.**
   War risk insurance policy, issued under War Risk Insurance Act Oct. 6, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514a et seq.), was subject to future laws made in relation thereto.

3. **Constitutional law ⬤⟹93(1)—Eminent Domain ⬤⟹2(1)—Army and navy ⬤⟹51½, New, vol. 12A Key-No. Series—Improperly designated beneficiary entitled to share in proceeds of war risk insurance on amendment of act subsequent to insured's death.; amendment held not to violate Fifth Amendment.**
   Where insured by will designated aunt as beneficiary of one-half of war risk insurance, and died prior to enactment of Act Dec. 24, 1919,

---

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

amending War Risk Insurance Act Oct. 6, 1917 (Comp. St. Ann. Supp. 1923, § 514aa et seq.), so as to permit designation of aunt as beneficiary after government had commenced making payments to his mother, designated as beneficiary in policy, aunt after such amendment was entitled to one-half of the unpaid installments, and 1919 amendment, so construed, does not violate Const. Amend. 5, forbidding taking private property without just compensation, since a citizen has no vested rights in statutory privileges.

4. **Constitutional law** ⬦186—**Property may be taken from person by retroactive legislation.**

Property may be taken from a person by retroactive legislation, which, were it not for such legislation, he could have held as his own.

In Equity. Suit by Emma White against the United States for war risk insurance, in which Lucy Reeves intervened. Decree providing for division of proceeds between complainant and intervener.

Gordon, Gordon & Crank, of Louisa, Va., for complainant.

Maj. Paul W. Kear, U. S. Atty., of Norfolk, Va., and Callom B. Jones, Asst. U. S. Atty., of Richmond, Va., for the United States.

F. G. Duvall, of Alexandria, Va., for intervening defendant.

GRONER, District Judge. This case presents for decision the question as to whether the complainant is entitled to the whole of the proceeds of the policy of insurance issued by the government upon the life of George White, a soldier in the military service of the United States in the late European War, or whether her sister, Lucy Reeves, the intervening defendant, is entitled to a half share thereof.

White was insured by the government under the War Risk Insurance Act of October 6, 1917 (40 Stat. 398; Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514a et seq.) in the sum of $10,000, in which insurance he named his mother, Emma White (complainant), as the beneficiary. He died in the line of duty October 4, 1918. On January 8, 1919, the Bureau awarded insurance to complainant at the rate of $57.-50 per month, effective from the death of the insured, and continued to pay the same through January, 1921, amounting in all to the sum of $1,602.50.

On July 1, 1918, three months and three days before his death, White wrote a letter to his aunt, Lucy Reeves (intervening defendant), as follows:

"44th Company 11th Prov. Battilion, 155th Depot Brigade.

"Camp Lee Virginia July 1st 1918.

"Dear Aunt: Your letter was rec. and I was glad indeed to hear from you and to know all was usualy well and getting along alright, I am well and getting very well in camp. (I had my Insurance made to Mother But I wrote to her and told her about it and If anything should happen to me she will get $57.50 a month until she had drawn $10,000, and she is to Give you Half of it. I couldn't have it made out to Both of you all, now this is in case of anything Happen to me, Witch I Hope wont nothing happen to me, all I can do trust in the Lord. Witch I am doing.) * * *        George White."

The act of Congress under which the policy was issued provided a restricted list of beneficiaries to whom the insurance should be payable in the event of death, and included, at the time the policy was executed,

---

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and also at the time of the soldier's death, spouse, child, grandchild, parent, brother, or sister. The right to change the beneficiary, without the consent of such beneficiary, within the restricted class at any time during the life of the insured, or by last will, was authorized by the terms of the act, which further provided that the insurance should not be assignable, and should not be subject to the claims of creditors of the insured or of the beneficiary.

On December 24, 1919, the War Risk Insurance Act of October 6, 1917, was amended by enlarging the permitted class of beneficiaries to include uncles and aunts, nephews and nieces, brothers-in-law and sisters-in-law of the insured, and by further providing that all awards of insurance under the provisions of the act as originally enacted should be revised as of the 1st day of the third calendar month after the passage of the amendment, in accordance with the provisions of the act as modified. This amendment brought Lucy Reeves, the intervening defendant, and the aunt of the soldier, within the prescribed class. On February 19, 1921, the letter above quoted was duly admitted to probate as the true last will and testament of George White, and a copy thereof forwarded to the War Risk Insurance Bureau, after which time the award in favor of the complainant was suspended, and since which time no further payment has been made on account of said insurance.

[1] No contention is made that the soldier's letter, which has been admitted to probate as his will, is not a sufficient designation of a beneficiary to satisfy the requirements of the act. It is, however, insisted that since the designation, when made, was illegal, the rights vested in the complainant by the death of the soldier while this illegality continued may not be divested by a subsequent act of Congress, curing the illegality, because to do so would be to offend against the Fifth Amendment to the Constitution, forbidding the taking of private property without just compensation. And this presents the question upon which the case depends, namely, whether under a certificate of war risk insurance a beneficiary named therein acquires a vested interest in the insurance upon the death of the insured.

Admittedly this would be true if the contract were the ordinary insurance policy, for it may be stated as the settled law that as to such contracts the beneficiary, during the life of the insured, where the policy permits a change of beneficiary at the will of the insured, obtains no vested interest in the insurance; but it is equally true that, upon the death of the insured without a change of beneficiary, the rights under the policy become vested, and may not be divested nor diminished in value by any act of the insurer or by any subsequent change of law. The policy of insurance sued on, however, is not the ordinary form used by insurance companies generally. It is a contract made pursuant to the provisions of a federal statute, and must be construed with reference to such statute. The primary purpose of the act was to afford protection to the soldier and his dependents, and the premiums charged constitute a comparatively small part of the expense involved. As was stated by Senator Williams, in charge of the bill, in the Senate, it was not the purpose of the government to go into the insurance business, but rather to afford protection not otherwise obtainable to the

soldiers and their dependents (55 Cong. Rec. p. 7690), or, as was said by Comptroller Warwick:

"It is not an out and out contract of insurance on an ordinary business basis; neither is it a pension, but it partakes of the nature of both." Op. to Sec'y Treas., July 5, 1919.

The application for insurance is not subject to rejection, or acceptance, at the discretion of the government, but the right, if exercised within the prescribed time, requires the issuance of the insurance in accordance with the application. It is nonassignable, is not subject to the claims of creditors, and the rights under it may be terminated by certain designated unlawful conduct on the part of a soldier's widow. The application, which is made a part of the contract, in itself provides that the insurance is granted under authority of the act of Congress, and subject to all the provisions of the act and to any amendments thereto, and to all regulations thereunder, now in force or which may thereafter be adopted.

[2] The extent to which the contract was subject to existing and future laws made in relation thereto, as well as to the regulations then existing and thereafter made, is very fully and ably discussed by Judge Donahue, speaking for the Circuit Court of Appeals, Sixth Circuit, in the case of Helmholz et al. v. Horst et al., 294 Fed. 417, in which, after summarizing the differences between private contracts of insurance and war risk insurance, and the reasons for such differences, he concludes that subsequent amendments of the War Risk Insurance Act and subsequent regulations affecting the contract, which is still in force, do not impair the obligation of an existing contract, but are in direct conformity to its terms and in furtherance of its purpose and intent, and that therefore it is "evident that the beneficiary named by the insured, or designated by law, takes no vested interest in the insurance other than to the accrued payments during the time the beneficiary was entitled (by then existing law) to receive the same."

The facts in the Horst Case are so nearly identical with those in the case under consideration that it is impossible to distinguish them. There, as here, the soldier desired to designate his aunt, with whom he had lived, as beneficiary. There, as here, he was advised that this was not permissible under the existing law; and there, as here, he executed a will bequeathing his insurance money to his aunt. He was wounded at Belleau Wood, and died in June, 1918, and the Bureau awarded the benefits of his certificate of insurance to his brothers and sisters, as statutory beneficiaries. After the amendment of 1919, his aunt, having been brought within the provisions of the act by that amendment, claimed under the will as to all then unpaid installments, and the decision was in her favor, upon the ground that the amendment violated no vested rights, because there were none, but gave effect to the true intent of the insured.

A similar conclusion is announced by Judge Witmer in the case of Cassarello v. U. S. (D. C.) 271 Fed. 486, affirmed (C. C. A.) 279 Fed. 396. In that case a soldier to whom insurance had been issued designated his stepbrother as beneficiary. After the death of the soldier an award was made to the designated beneficiary, who, however, survived his stepbrother only a few months, but left a will bequeathing

the installments of insurance money to which he was entitled to his mother and his wife. After quoting at considerable length the various provisions of the War Risk Insurance Act, and of the rules and regulations of the department made to carry out the terms of the act, Judge Witmer states the result to be as follows:

"Nor is there anything in the language of the act itself, or as appearing from the discussions of the bill by committee members on the floor, to lend countenance to any construction that a beneficiary had a vested right in the installments not yet accrued, even after the death of the insured, but the contrary seems to have been in mind."

In line with the above, see, also, Gilman v. U. S. (Circuit Court of Appeals, Third Circuit) 294 Fed. 422.

[3, 4] In the instant case the soldier desired to divide the insurance accruing in the event of his death between his mother and his aunt. Finding that the then existing law did not permit the designation of his aunt, he made the designation of his mother alone, simultaneously communicating his desire that any sum payable under the insurance should be equally divided. Under the existing law he had the right within his lifetime, or by last will, to designate the beneficiary, and likewise to change the same, provided the person so designated was within the class permitted by law. He made a will designating his aunt as beneficiary of one-half of the insurance, and to that extent revoked the previous designation of his mother for the whole. This designation was ineffective only because the aunt was not within the class permitted by Congress to be designated.

In granting the insurance, it was within the power of the United States to say to what persons and under what circumstances the insurance would be paid, and the power to restrict the class of beneficiaries could afterwards be exercised to enlarge it. In the amendment of December 24, 1919 (Comp. St. Ann. Supp. 1923, § 514aa et seq.), Congress did not interfere with payments made prior to that date, but provided specifically that nothing contained in the amendment should interfere with the payment of the monthly installments due under an insurance policy up to and including the second calendar month after the passage of the amendment, but that the award and the payments thereunder should be revised as of the 1st day of the third calendar month after its passage. It has long been settled law that, by retroactive legislation, property may be taken from a person, which, were it not for such legislation, he could have held as his own. As has been already stated, the designation of the intervening defendant was in all respects regular, except that she was without the class permitted to be so designated. Until this restriction was removed she had no legal right which she could assert, but when it was removed her rights to participation in the benefits of the insurance from that day forward were wholly restored. To hold otherwise would be to reverse the general rule that a citizen has no vested rights in statutory privileges and exemptions, or that equally salutary rule that there can be no vested right to do a wrong.

The conclusion of the court is, therefore, that as to all installments now due and hereafter becoming due the same shall be equally divided between the complainant and the intervening defendant, and a decree will be entered accordingly; the costs to be divided.