Surrogate's Court, Cattaraugus County, October, 1926. [Vol. 128

jury with the facts in the same sentence, the same breath. He is entitled to have his motion for a directed verdict upon the law denied before he is required to request to go to the jury. Upon a denial of his motion for a directed verdict, his failure thereafter and before the verdict against him is rendered to request to go to the jury might well be deemed a submission of all the facts to the trial court for its decision. There is nothing in the record to indicate that the defendant intended that the facts were to be decided by the trial court. The defendant's motion was that a verdict be directed in his favor upon the ground that the plaintiff had failed to establish a cause of action, a pure legal question. The motion was limited to questions of law; it was not a motion for a directed verdict upon the facts. Even though it were a general motion for a directed verdict upon the evidence, the defendant was entitled to have it ruled upon before the verdict was directed and rendered, in order to charge him with having withdrawn the facts from the trial jury and submitted them to the trial court for its decision. The verdict was directed prematurely. As was said in *Happel* v. *Lehigh Valley Railroad Co.* (210 App. Div. 461, 463): " A party has a right to an explicit determination of his motion and an opportunity after such determination to make his request to go to the jury, and this right cannot be defeated by any quick action of the court in the direction of a verdict." (See, also, *O'Connor* v. *Webber*, 239 N. Y. 191; *Misner* v. *Kuchenreuther*, 212 App. Div. 741.)

The judgment of the City Court must be reversed, with costs to the appellant to abide the event of the new trial to be had in the City Court.

---

In the Matter of the Estate of ROLLIN S. STORUM, Deceased.

Surrogate's Court, Cattaraugus County, October 21, 1926.

Insurance — war risk insurance — beneficiary, wife of insured, died before all installments were paid — insured left no descendants but left father and mother — beneficiary did not have vested interest in installments not due — under War Risk Insurance Act, installments not due on death of beneficiary passed to those entitled to personal estate of insured under State statute if they are within permitted class of beneficiaries — father and mother of insured are entitled to installments — mother-in-law of insured, though within permitted class of beneficiaries, not entitled to take.

Under a policy of war risk insurance, the installments unpaid at the time of the death of the beneficiary, in this case the wife of the insured, pass under the War Risk Insurance Act to those entitled to the personal estate of the insured under the State statute, if they are within the permitted class of beneficiaries designated in the War Risk Insurance Act.

The beneficiary named in the policy of war risk insurance had no vested right in installments not due at the time of her death.

Accordingly, the installments not due at the time of the death of the beneficiary passed to the father and mother of the insured, since he left no descendants, and since they, under our statute, are entitled to take all personal estate, and the mother-in-law of the insured has no claim to the installments although she is within the permitted class of beneficiaries

PROCEEDING involving distribution of proceeds of war risk insurance.

*Herman Lavery,* for the administrator of the estate of Rollin S. Storum.

*Ernest F. Kruse,* for the administrator of the estate of Bessie Storum.

BIRD, S.   Rollin S. Storum entered the service of the United States in the World War as a soldier, and on August 14, 1918, applied for insurance in the amount of $10,000 under the War Risk Insurance Act.   In his application for insurance he designated his wife, Bessie Storum, as beneficiary.   The soldier died in the military service of the United States leaving him surviving his wife, the beneficiary named in his application.   The application and the certificate of insurance issued thereon together constitute the contract of insurance.   By the terms of the act creating the Bureau of War Risk Insurance in force at the time the application was made, which was also in force at the time of the death of the insured, the insurance was payable in 240 equal monthly installments to the beneficiary named, of $57.50 each.

The installments as they matured were paid to Bessie Storum, the widow of Rollin S. Storum and the beneficiary named in the application, until her death on March 7, 1925.   Subsequent to the death of Bessie Storum, upon the application of the father of the insured, an administrator of the estate of. Rollin S. Storum was appointed and under the terms of the law then in force the unpaid installments under this policy, aggregating $7,498 and accrued interest, were paid to the administrator of the deceased soldier's estate to be distributed by him to those entitled thereto under the intestate law of this State.

The insured left no child or descendants of deceased children. It is claimed on behalf of the administrator of the estate of the insured that the father and the mother of the insured are entitled to the entire sum, to be divided equally between them.   It is claimed on behalf of the administrator of the estate of the widow of the insured that one-half goes to the mother of the deceased wife, her father being dead, and the other half is to be divided equally between the father and the mother of the insured.   My attention

has been called to no decisions in the courts of this State applicable to the question here raised, and I have not been able to find any. It becomes necessary to some extent to review the provisions of the War Risk Insurance Act and the amendments thereto and the decisions of the Federal courts relating thereto for the purpose of spelling out the intention of Congress under the law now in force.

War risk insurance is in many respects different from ordinary life insurance. The purpose of the War Risk Insurance Act was to give insurance to those who entered the military and naval service and to protect those who were dependent upon them. To this end the class of beneficiaries was narrowly restricted. The premium rates charged were the net rates based upon the American Experience Table of Mortality and interest at three and one-half per cent per annum. The government wholly assumed without compensation the expenses of administration and the excess mortality and disability cost resulting from the hazards of war. This insurance was open to every soldier and sailor in the service without any medical examination whatever. The insurance is not assignable and is not subject to claims of creditors of the insured or the beneficiary. As originally passed, the beneficiaries were limited to a spouse, child, grandchild, parent, brother or sister. Subject to the regulations of the Bureau the insured had the right at all times to change the beneficiary or beneficiaries, but only within the limits of the classes specified. The certificate of insurance contained this important provision: " Subject to the payment of the premiums required, this insurance is granted under the. authority of an Act amending an Act entitled ' An Act to authorize the establishment of a Bureau of War Risk Insurance in the Treasury Department,' approved September 2, 1914, and for other purposes, approved October 6, 1917, and subject in all respects to the provisions of such Act, of any amendments thereto, and of all regulations thereunder, *now in force or hereafter adopted,* all of which, together with the application for the insurance and the terms and conditions published under authority of the Act, shall constitute the contract."

The Federal government had no intention of entering into the insurance business. This contract partakes both of the nature of insurance and of pension. It is not governed by the laws of either, but is governed wholly by the statute creating the War Risk Insurance Bureau and the amendments thereto, and the rules and regulations promulgated by the directors of the Bureau and it is immaterial whether the amendments were passed, or the rules and regulations promulgated before the contract became effective or afterward. If this were an ordinary contract for life

insurance, upon maturity of the policy at the death of the insured the right of the beneficiary becomes vested and the estate of the wife of the insured would be entitled to all installments not yet accrued and unpaid. It is, however, settled by authority that there is no vested right in installments not yet due even after the death of the beneficiary. (*Cassarello* v. *United States*, 271 Fed. 486, 490; affd., 279 id. 396; *White* v. *United States*, 299 id. 855.)

The court in discussing the *Cassarello* matter says: " Section 402 of the bill, as originally introduced, in naming the class of beneficiaries, contained the provision: ' And to such other persons as may be provided from time to time by regulation.' These words were stricken out by Senate amendment 108. This shows clearly the intention of Congress to limit and fix the class of beneficiaries and to prevent any extension even by the bureau. The installments are extended for the soldier's dependents within a limited class, and only these." The class of original beneficiaries was subsequently extended by Congress in 1919 so as to include in addition to those already enumerated uncle and aunt, nephew and niece, brother-in-law and sister-in-law of the insured and the amendment was made retroactive in effect from October 6, 1917, with certain provisions not important here. (41 U. S. Stat. at Large, 375, chap. 16, § 13.) This amendment also provided: " That if no person within the permitted class of beneficiaries survive the insured, then there shall be paid to the estate of the insured the monthly installments payable and applicable under the provisions of Article IV of the War Risk Insurance Act." (41 U. S. Stat. at Large, 376, chap. 16, § 14.) The amendment further provides: " That if any person to whom such yearly renewable term insurance has been awarded dies, or his rights are otherwise terminated after the death of the insured, but before all of the two hundred and forty monthly installments have been paid, then the monthly installments payable and applicable shall be payable to such person or persons within the permitted class of beneficiaries as would, under the laws of the State of residence of the insured, be entitled to his personal property in case of intestacy; and if the permitted class of beneficiaries be exhausted before all of the two hundred and forty monthly installments have been paid, then there shall be paid to the estate of the last surviving person within the permitted class the remaining unpaid monthly installments." (41 U. S. Stat. at Large, 376, chap. 16, § 15.)

By the act entitled: " An Act to consolidate, codify, revise, and reenact the laws affecting the establishment of the United States Veterans' Bureau and the administration of the War Risk Insurance Act, as amended, and the vocational rehabilitation act, as amended," approved June 7, 1924, among other things it also provided as

follows: " If no person within the permitted class of beneficiaries survive the insured, or if before the completion of payments the beneficiary or beneficiaries shall die and there be no surviving person within said permitted class, then there shall be paid to the estate of the insured the present value of the monthly installments thereafter payable under the provisions of this title: *Provided,* That in cases where the estate of the insured would escheat under the laws of the place of his residence the insurance shall not be paid to the estate of the insured, but shall escheat to the United States. and shall be credited to the United States Government life insurance fund or the military and naval insurance appropriation, as may be proper. This section was deemed to be in effect as of October 6, 1917." (43 U. S. Stat. at Large, 625, chap. 320, § 303.)

At various times Congress has defined who are within the designated class of beneficiaries and by the act of 1924 among other definitions appeared the following: " The term ' parent ' includes a father, mother, grandfather, grandmother, father through adoption, mother through adoption, stepfather, and stepmother, either of the persons in the service or of the spouse." (43 U. S. Stat. at Large, 607, chap. 320, § 3.) Where a person not in the designated class of beneficiaries is named as one of the beneficiaries in the application for insurance and by subsequent legislation is brought within the class he is entitled to the benefit of designation with the same force and effect as though he had been within the designated class at the time the application was made. (*White* v. *United States,* 299 Fed. 855.)

Accordingly the mother of Bessie Storum was within the designated class of beneficiaries at the time of the death of the beneficiary named in the application by the act approved March 4, 1925. The general act of June 7, 1924, was amended in several respects and section 303, title 3, was made to read as follows: " If no person within the permitted class be designated as beneficiary for yearly renewable term insurance by the insured either in his lifetime or by his last will and testament or if the designated beneficiary does not survive the insured or survives the insured and dies prior to receiving all of the two hundred and forty installments or all such as are payable and applicable, there shall be paid to the estate of the insured the present value of the monthly installments thereafter payable, said value to be computed as of date of last payment made under any existing award: *Provided,* That all awards of yearly renewable term insurance which are in course of payment on the date of the approval of this Act shall continue until the death of the person receiving such payments, or until he for-

feits same under the provisions of this Act. When any person to whom such insurance is now awarded dies or forfeits his rights to such insurance then there shall be paid to the estate of the insured the present value of the remaining unpaid monthly install-ments of the insurance so awarded to such person: *Provided further,* That no award of yearly renewable term insurance which has been made to the estate of a last surviving beneficiary shall be affected by this amendment: *Provided further,* That in cases when the estate of an insured would escheat under the laws of the place of his residence the insurance shall not be paid to the estate but shall escheat to the United States and be credited to the military and naval insurance appropriation. This section shall be deemed to be in effect as of October 6, 1917." (43 U. S. Stat. at Large, 1310, chap. 553, § 14.)

Bearing in mind the general purposes of the War Risk Insurance Act as disclosed by the act itself, its interpretation by the Federal courts and positions taken by the Federal authorities, the question here is to whom under the statute and the certificate of insurance the monthly installments of the original unconverted war risk insurance falling due after the death of the beneficiary designated by the insured are payable. In other words, who is the person or persons within the permitted class of beneficiaries as would under the laws of New York be entitled to the insured's personal property in case of intestacy? The beneficiary, as such, has no vested interest in the insurance and the estate of such beneficiary or those claiming under the beneficiary thereby acquire no interest in the installments falling due after the beneficiary's death. (*Cassarello* v. *United States,* 271 Fed. 486; *Salzer* v. *United States,* 300 id. 764, 766.)

In the *Salzer* case the insured was a resident of the State of New York and made application in the usual form under the War Risk Insurance Act and named his then *fiancée,* who a few weeks thereafter became his wife, as beneficiary. The usual certifi-cate was issued to him dated the date of the application. At the time of the designation of the beneficiary she was not within the permitted class. At the time of his death she was within the permitted class by reason of her marriage to him. His wife died the following day and each died intestate. The insured left neither father, mother, brother, sister, grandparent nor descendant sur-viving him. His wife left surviving her, her father, mother and sister. It so happened in that case that the named beneficiary was also the identical person to whom the insurance would have been paid if no beneficiary had been named. In the opinion in that case the court says: " It may be conceded that naming the wife as beneficiary does not lessen any interest that her estate

would have in the installments accruing after her death, had some one else been named as beneficiary, or had no beneficiary been designated. The real question is: Does the person who at the death of the insured would take his personal property in case of intestacy acquire a vested interest in all subsequent installments, even though a designated beneficiary acquires no such vested interest?

" It seems clear to me that this is not the proper construction of the act. Prior to the amendment of December 24, 1919 (41 Stat. 371), the insurance was payable *only* to certain classes. If in this case the wife, as the person entitled to her husband's estate on intestacy, took at his death a vested interest in the installments payable after her own death, then the installments might go to persons not within the designated classes. Plaintiff endeavors to avoid this conclusion by admitting that only such representatives of the wife as would come within the permitted class of beneficiaries could take. There is, however, in my judgment, nothing in the act prior to the amendment of December 24, 1919, which justifies such construction. The person entitled to the insurance, whether on the death or in the absence of a named beneficiary, *must trace his claim directly from the insured.*"

The court also held in the *Salzer* case that it was not necessary in that case to determine whether the installments falling due after the death of the named beneficiary became payable to the person then living and within the permitted class who, at the time of the actual death of the insured, would have been entitled to his personal property on intestacy, or to the person then living who would have been so entitled if the insured had died at the time of the later death of the named beneficiary. Had the court determined that question it would be controlling here unless the act of 1925 has materially changed the law. All the court determined in that case was that on the death of the named beneficiary subsequent installments are not payable to any one who, under the laws of the State of the insured's residence, would not be entitled to his personal property on intestacy, except only as provided by section 15 of the amendment of December 24, 1919, which is not here applicable. (41 U. S. Stat. at Large, 376, chap. 16, § 15.)

It is claimed on behalf of the administrator of the estate of Bessie Storum that under the amendment of 1925 the distribution upon the death of the named beneficiary is to be to those who would have taken had the unpaid installments been distributed at the time of the death of the insured. If this contention is right, then it would follow as a matter of course that the estate of Bessie

Storum, she having survived her husband, would be entitled to half of the unpaid installments and the other half would go to the father and mother of the insured equally under the intestate law of this State.    As I view the amendment of 1925 it was not intended to make any radical change in the law itself so far as the payments subsequent to the death of the named beneficiary are concerned, but it was rather directed to administrative features of the law. It is apparent that the procedure under the amendments of 1919 and 1924, whereby in case of the death of the named beneficiary before all of the 240 monthly installments had been paid, the remaining installments were to be paid directly as they accrued to those who would be entitled to share in the distribution of the estate of the insured as in case of intestacy, with the readjustments in case of the death of one or more of such persons, was both cumbersome and expensive to the government.    This would of course be aggravated by the difference in the laws of the several States as to the persons entitled to take, and the share which each would take in case of intestacy.    This to my mind was a sufficient reason for the change made by the law of 1925.    The primary purpose of the law as I interpret it was not changed.    It seems to me that this view is fortified by the dicta of the Federal court in the *Salzer* case.

The reasoning in the *Salzer* case is equally applicable here and it is still necessary in order to entitle a claimant to share in the distribution upon the death of a named beneficiary for him to trace his right thereto directly through the insured.

There is no claim, and there can be none, that the mother of Bessie Storum, as such, is entitled under the intestate law of this State to share in the distribution of the estate of Rollin S. Storum. The claim is predicated on the theory that the remaining unpaid installments, or rather the present value of them, is to be distributed as of the date of the death of the insured, and that the mother of Bessie Storum is now entitled to take the share that her daughter would have taken, had a distribution been made at that time.    I do not interpret the amendment of 1925 as having any such purpose, and that the intention of Congress was that the intestacy law would operate in respect to relatives as stated in the *Salzer* case.    I have been unable to find any discussion in Congress of the purpose of the change at the time the amendment was passed.

I do not believe that any such radical change as is claimed by the administrator of the estate of Bessie Storum was intended, and I accordingly hold that the father and the mother of Rollin S. Storum are entitled to the entire fund, one-half to each.

Decree may be prepared accordingly.