[1] Reported in 259 N.W. 548.
On petition for distribution of the estate of Sidney H. Bergstrom, deceased, the appellant appeared and claimed to be his sole heir at law and entitled to the proceeds of his estate, which consisted solely of war risk insurance. The probate court rejected the appellant's claim in favor of that of the father and the brothers and sisters of the deceased, holding that appellants claim to the insurance money was forfeited by misconduct under the war risk insurance act. An appeal was taken to the district court, which likewise made findings and ordered judgment in favor of the father and the brothers and sisters. The case comes here on appeal from a judgment entered pursuant to the district court's order. The question presented here is whether or not appellant by her open and notorious illicit cohabitation with one Miller is precluded from inheriting from her deceased husband's estate funds derived from war risk insurance.
Bergstrom and the appellant were married December 7, 1914. The only child born of this marriage died at birth in February, 1916. In March, 1916, the appellant deserted Bergstrom and went to the state of South Dakota, where she has since resided. She never returned to Bergstrom. March 23, 1917, Bergstrom commenced divorce proceedings in Hennepin county, where he then resided, and service was made upon the appellant, who defaulted, *Page 99 
but no decree of divorce was ever entered. From September, 1917, until. September 24, 1923, appellant lived in open and notorious illicit cohabitation with a man named Miller at Selby, South Dakota. On the latter date she married him.
April 29, 1918, Bergstrom enlisted in the United States army, served at Camp Dodge until May 16, 1918, then at Camp Traverse until June 7 of that year, when he entrained for Camp Mills, whence he sailed for France on June 19. September 25, 1918, he was killed in action.
In April, 1919, appellant was delivered of two children who died of premature birth. In her application for a widow's allowance she claimed that Bergstrom was the father of these children, but the court found that they were illegitimate, having been conceived at a time when Bergstrom had no access to appellant.
Bergstrom held a $10,000 war risk insurance policy, one of the provisions applicable to which was that "the open and notorious illicit cohabitation of a widow who is a claimant shall operate to terminate her right to compensation or insurance from the commencement of such cohabitation." Bergstrom's mother, Mary Kane Bergstrom, of Big Stone county, Minnesota, was designated as beneficiary in the policy. After Bergstrom's death appellant made claim to the bureau of war risk insurance for a widow's allowance. The claim was allowed, but an investigation resulted in a disclosure of the illicit relations with Miller, and a stop-payment order was entered against the appellant.
The director of war risk insurance was given authority to make rules and regulations and to decide all questions arising under the act. Upon the appellant's application to be given a widow's allowance, he decided that her conduct had terminated her rights either to compensation or insurance. At that time she was making no claim for insurance, but the same conduct which precluded her from receiving compensation also forfeited her rights to war risk insurance. She is here, however, claiming not as a beneficiary of the insurance but as an heir of Bergstrom's estate.
Mary Kane Bergstrom, the mother, received the monthly payments under the terms of the insurance policy until her death October *Page 100 
28, 1931, when the committed value remaining in the policy was $4,208. The government has paid that sum to the administrator. The petition for distribution followed, with the result above stated.
We are not concerned here with the question whether the rights of the beneficiary or of those who would take after her death became fixed at the death of the insured, nor are we concerned with the government's right to change those rights by subsequent enactment. The money has been paid to the administrator and has become part of the estate. The sole question before us is whether the money is still charged with the condition which precludes the widow from taking it.
Article IV of the act of October 6, 1917 (40 St. 398, 409), § 400, et seq. covered the subject of life insurance by the government upon persons in the armed services and provided that the director of war risk insurance should properly determine upon and publish full and exact terms and conditions for the contract of insurance. October 15, 1917, the terms of the contracts were published. Section 22, subsec. 5, of the act contained the provision above quoted. This provision became a part of the contract between the United States and the Bergstroms which was to be found in part in the policy, in part in the statutes under which it was issued, and in part in the promulgated regulations. These provisions constituted a contract which was property and which created a vested right subject only by its terms to amendment by the United States. Lynch v. United States, 292) U.S. 571, 54 S.Ct. 840,78 L. ed. 1434.
By § 600 of the act of June 7, 1924 (43 St. 607, 629, c. 320, 38 USCA, § 571) an act to consolidate, codify, revise, and reënact the laws affecting the establishment of the United States Veterans Bureau and the administration of the war risk insurance act, certain sections of the war risk insurance act were repealed, among which was the forfeiture clause of the act of October 6, 1917, heretofore referred to. But § 602 of the act of June 7, 1924, contained a saving clause so that the repeal did not affect any act done or right or liability accrued prior thereto, but all such rights and liabilities were preserved in the same manner as if the repeal had not *Page 101 
been made. The same provision was made in regard to forfeitures incurred under any of the laws embraced in the codification. Subsection 5 of § 22 of the act of October 6, 1917, was therefore not repealed insofar as it affects the case before us. Mack v. United States (C.C.A.) 28 F.2d 602. It seems quite apparent to us that the act of June 7, 1924, as amended by that of March 4, 1925, was passed to simplify the administration of the war risk insurance act and the distribution of insurance thereunder and not in an attempt to affect terms of any existing contract between the United States and an insured or the beneficiaries of the insurance. The saving clause indicates that.
The government by the act of 1925 substituted the estate of the deceased soldier for the previously authorized payees, and it is the federal and not the state law which makes the estate the payee. It might have prescribed the conditions or limitations or have defined the degree of heirship within which the insurance money should be distributed. In the case before us it has not done so unless the clause disqualifying the widow as a claimant is a condition which the government by its statute and by its contract with the insured has attached to and imposed upon the insurance funds and their distribution. It is true that these funds when paid to the estate are not free from claims of creditors under the exemption clause of the war risk act, but those clauses have been held to be for the sole benefit of the insured and the beneficiaries, for the protection of their dependents, and are not in furtherance of contracts with the insured nor are they imposed upon the insurance money when it is distributed to the heirs as distinguished from beneficiaries or dependents. In re Estate of Hallbom, 189 Minn. 383, 249 N.W. 417, affirmed, Pagel v. Pagel, 291 U.S. 473, 54 S.Ct. 497, 78 L. ed. 921. It seems to us, however, that the character of the clause here under consideration is clearly to be distinguished from that of those exemption clauses and that the purpose of both the insured and the government was to attach to the insurance fund a condition that a widow who has disqualified herself by her conduct should not take. Had the purpose of congress, in making the exemption clauses, been to exempt the insurance fund from the claims *Page 102 
of creditors when it came to the estate, it seems obvious from the decisions cited that that purpose would be controlling. It was held, not that the fund had passed from the control of the congress or from the contract which the government had made with the insured, but that it was not the intent of either to exempt the fund from such claims. Here the purpose and intent appear to have been to subject the fund to the provision against the widow who misconducted herself. It was the intent of the insured, and we believe it to have been the intent of congress that she should not take. In our opinion the clause prohibiting her from doing so carried through to the fund in the hands of the administrator.
We think the administrator as successor to the insured may invoke the terms of the contract and the federal statute as against appellant. The courts should regard that statute and honor, not circumvent, the terms of the contract in the distribution of the estate. The appellant by the terms of the contract and by the terms of the federal law was disqualified to take as a claimant. We think the language applied to her either as a beneficiary or as a claimant to a share of the estate. The same conduct disqualified her in either capacity and followed the fund to incapacitate her as a claimant. Therefore the distribution of this fund should be made as if she no longer existed and as if she had not existed since the commencement of her misconduct.
Affirmed.