## Chapman et al. v. Upton et al.
(Decided Dec. 18, 1936.)

FIELD McLEOD and DAVID J. HOWARD for appellants.

L. M. MORANCY and M. T. BLACKARD for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming in part and reversing in part.

In 1917 the Congress of the United States enacted what is generally known as the War Risk or Compensation Insurance Act, which was done on October 6 of that year, and being chapter 105, article 4, section 400 et seq., 40 Statutes at Large, 398, 409. It was amended in 1919 by chapter 16, 41 Statutes at Large, 371, and again in 1924 by the enactment of chapter 320, 43 Statutes at Large, 607, 624, and 625, and all of which is now title 38 U. S. C. secs. 511 and 514 (38 U. S. C. A. secs. 511, 514 and notes), but there is included in that Code a still later amendment enacted March 4, 1925, which is chapter 553, 43 Statutes at Large, 1302, and which again amended section 303 of the World War Veterans' Act (38 U. S. C. A. sec. 514) as amended by the prior amendment of 1924. The 1925 amendment, in so far as pertinent to the question involved in this case, said: "If no person within the permitted class be designated as beneficiary for yearly renewable term insurance by the insured either in his lifetime or by his last will and testament or if the designated beneficiary does not survive the insured or survives the insured and dies prior to receiving all of the two hundred and forty installments or all such as are payable and applicable, there shall be paid *to the estate* of the insured the *present* value of the monthly installments thereafter payable, said value to be computed as of date of last payment made under

any existing award." (Our italics.) Section 14 (38 U. S. C. A. sec. 514).

The original act as amended by the 1919 amendment said, on the same question of distribution of proceeds of War Risk Insurance, this: "That if any person to whom such yearly renewable term insurance has been awarded dies, or his rights are otherwise terminated after the death of the insured, but before all of the two hundred and forty monthly installments have been paid, then the monthly installments payable and applicable shall be payable to such person or persons within the permitted class of beneficiaries as would, under the laws of the State of residence of the insured, be entitled to his personal property in case of intestacy; and if the permitted class of beneficiaries be exhausted before all of the two hundred and forty monthly installments have been paid, then there shall be paid to the estate of the last surviving person within the permitted class the remaining unpaid monthly installments." Act Cong. Dec. 24, 1919, sec. 15, 41 Stat. 376.

Bert G. Wilson in his lifetime was a World War Veteran, and shortly after the passage of the first War Risk Insurance Act by Congress he procured, according to its terms, a policy on his life in the sum of $10,000, in which he named no beneficiary from the class to which he was entitled to select one, or at all, nor did he execute any will or in any wise designate in writing a beneficiary. He died in 1918 a resident of Woodford county, Ky., leaving surviving him his mother (his father having previously died), one brother, Ernest L. Wilson, and two married sisters, the appellants herein. The insured collected no part of the insurance during his lifetime, and the War Risk Bureau, charged with the administration of the act, allocated to the mother of the insured soldier the monthly payments due to be paid thereon and which she collected up to the time of her death occurring in 1921. Upon her death, following the directions of the 1919 amendatory act, supra, the same board allocated the remaining uncollected monthly payments equally to the surviving brother and the two surviving sisters of the insured, payable to each of them in monthly installments, each of them receiving one-third of the entire monthly amount due. They each collected their respective allotments as so made until Sep-

tember 30, 1932, when Ernest L. Wilson, the brother, died intestate leaving surviving him his widow and a son of tender years, Bert Wilson, Jr. The uncollected commuted amount due upon the third of the benefits of the insurance that had previously been allotted to Ernest L. Wilson was at his death the sum of $1,264, which was paid by the War Risk Bureau to the administrator of the insured soldier. This litigation followed for the purpose of determining who was entitled to that sum and how it should be distributed. The trial court adjudged that the infant son of Ernest L. Wilson was entitled to all of it, and from that judgment this appeal is prosecuted.

It is most earnestly insisted by learned counsel for the two surviving sisters of the insured that upon the death of Ernest L. Wilson his uncollected allotted share of uncollected monthly payments due under the policy (because of the inserted provision from the 1919 amendment) reverted back to the estate of the insured, and became distributable to his heirs as of the day of his death, and that the contested sum should be distributed one-third to each of them, and one-third to the estate of Ernest L. Wilson. The guardian for the infant, as well as the widow of Ernest L. Wilson, with equal energy contend that the allotment made upon the death of the mother of the insured was a final one under the retroactive 1925 amendment, and that Ernest L. Wilson then became vested absolutely with his interest in the one-third of the policy allotted to him upon the death of his mother. Learned counsel for the sisters cite a number of cases which he insists supports his contention, chief among which are: Cassarello v. United States (D. C.) 271 F. 486; Salzer v. United States (C. C. A.) 300 F. 767; United States v. Mallery (C. C. A.) 48 F. (2d) 6; White v. United States, 270 U. S. 175, 46 S. Ct. 274, 70 L. Ed. 530; In re Bergstrom's Estate, 194 Minn. 97, 259 N. W. 548, 99 A. L. R. 1280; and others from State Supreme Courts. However, in none of them are the facts identical, or even substantially so, with those found in this case; but if they were, and the question had been determined outright, as is contended by learned counsel for the two sisters, such rulings would not be controlling here because of the 1925 amendment supra, which radically altered the manner of settlement of the benefits due under such policies. Its enacted substituted

method of settlement was made retroactive so as to relate back to the time of the original enactment of the first war risk insurance statute. That altered method so made by the 1925 amendment, as will be seen from the above excerpt taken therefrom, dispensed with the *monthly* settlement payments, as prescribed by the original act and all of its succeeding amendments up to the enactment of the 1925 amendment, and substituted therefor, in the event of the death of the soldier or beneficiary before collecting all of the provided monthly payments, this language: "There shall be paid to the estate of the insured the present value of the monthly installments thereafter payable, said value to be computed as of date of last payment [monthly] made under any existing award."

In speaking of the effect of that amendment, the Supreme Court in the case of Singleton v. Cheek, 284 U. S. 493, 52 S. Ct. 257, 259, 76 L. Ed. 419, 81 A. L. R. 923, after stating that the retroactive terms of the statute were within the power of Congress to enact, said: "By that amendment, the rule, which, upon the happening of the contingencies named in the prior acts, limited the benefit of the unpaid installments to persons within the designated class of permittees, was abandoned, and 'the estate of the insured' was wholly substituted as the payee. All installments, whether accruing before or after the death of the beneficiary named in the certificate of insurance, as a result, became assets *of the estate* of the insured upon *the instant* of his death, to be distributed to *the heirs* of the insured in accordance with the intestacy laws of the estate of his residence, such heirs to be determined *as of the date* of his death, and not as of the date of the death of the beneficiary." (Our italics.) It will therefore, be seen that, not only did the 1925 amendment dispense with future monthly payments in settlement of such policies, but likewise dispensed with the theretofore requirement that the remaining unpaid monthly benefits should become payable to "such person or persons within the permitted class of beneficiaries as would, under the laws of the State of residence of the insured, be entitled to his personal property in case of intestacy." Likewise it dispensed with the further requirement that if there should be any of the monthly installments uncollected, and the permitted class of beneficiary be exhausted, the remain-

ing portion should be paid "to the estate of the last surviving person within the permitted class." Such alterations were evidently enacted to dispense with the immense amount of trouble, labor, and bookkeeping that the method of distribution prior to the enactment of the 1925 amendment entailed upon the War Risk Bureau, and in lieu thereof it was provided that when the contingency happened for a distribution of the proceeds of the policy which the insured may not have collected during his lifetime, then the present value of the whole or any balance due thereunder should be commuted and the amount paid to the *estate* of the insured to be distributed finally to those who were entitled to it in case of intestacy under the laws of the forum of which the insured was a citizen. The holding in the Cheek Case was again affirmed in the case of McCullough v. Smith, 293 U. S. 228, 55 S. Ct. 157, 79 L. Ed. 297.

Because of the retroactive effect of the 1925 amendment, the allotment in this case to the mother upon the death of the insured became final, and her three children, being her only heirs, inherited it from her by the same retroactive process. But if, perchance, we should be mistaken in that interpretation, then the allotment made upon the mother's death of one-third each to her three children, being her only heirs—she being her son's only heir as of the date of his death—we are confident, was final and they became permanently vested with the shares so allotted to them, and which should have been made (under the retroactive effect of the 1925 amendment), not in future monthly installments payable to them, but in cash representing one-third of the then present or commuted value of all of the uncollected monthly installments. But that discrepancy, arising of course from the retroactive effect of the last (1925) amendment, can have no material effect on the distribution of the fund here involved, which has been commuted and paid, as we have seen, to the estate of the deceased soldier. The amount should have been so computed and distributed in cash to the heirs of the insured at the date of his death, but having been distributed, not in cash, but in monthly installments, it follows that the ones who would have been entitled absolutely to such monthly installments are now the ones who are entitled to the commuted cash value thereof. Such conclusion is not in conflict with any of the opinions relied

on by distinguished counsel for the surviving sisters of insured, nor with any text upon which he relies, conceding them to be decisive of his case, since they were rendered and their text written under the repealed portion of the 1919 act and before the effective day of the 1925 one. The retroactive effect of the latter act is the sole cause of the confusion existing in this case.

As we have said, the trial court in the judgment appealed from held that the infant son of Ernest L. Wilson was entitled to the whole proceeds, and which was erroneous to the extent that it deprived the widow of Ernest L. Wilson of her statutory right to participate in the distribution of the involved funds.

Wherefore, the judgment is affirmed in part and reversed in part, so as to allow the widow of Ernest L. Wilson to obtain her distributive share. She and his infant son will recover their costs against his two sisters, and the court will modify its judgment to conform to this opinion.

The whole court sitting.